**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIDNEY SCHOLL,                        )    No. 08-3977 SC
                                      )
              Plaintiff,              )
                                      )
     vs.                              )    ORDER GRANTING
                                      )    MOTIONS TO DISMISS
FEDERAL DEPOSIT INSURANCE             )    FOR LACK OF PERSONAL
CORPORATION as RECEIVER for           )    JURISDICTION,
WASHINGTON MUTUAL BANK, FA,           )    GRANTING MOTION TO
(a/k/a Washington Mutual Bank) a      )    <u>STAY</u>
Washington corporation; JERRY GILL;)
CHARLES BOWLING; MARK D. ROHDE;       )
MARK IV APPRAISALS, INC.,             )
an Oklahoma corporation; TURN-KEY     )
APPRAISAL SERVICES, LLC, an           )
Oklahoma limited liability            )
corporation; and ROHDE APPRAISAL      )
SERVICES,                             )
                                      )
              Defendants.             )
_____)

**I.   INTRODUCTION**

     Defendants Mark IV Appraisals, Inc. ("Mark IV") and Jerry

Gill ("Gill") filed a Motion to Dismiss for Lack of Personal

Jurisdiction and for Improper Venue ("Motion to Dismiss").  Docket

No. 8.  Defendants Mark D. Rohde ("Rohde") and Rohde Appraisal

Services ("Rohde Appraisal") filed a Motion to Quash Service of

Summons and Complaint ("Motion to Quash").  Docket No. 22.  The

Federal Deposit Insurance Company ("FDIC"), as Receiver for

Defendant Washington Mutual Bank ("WaMu"), filed a Motion to Stay

Pending Exhaustion of Mandatory Administrative Claims Process

United States District Court
For the Northern District of California

("Motion to Stay").  Docket No. 34.  Plaintiff Sidney Scholl ("Plaintiff" or "Scholl") opposed the Motion to Quash ("Opposition to Motion to Quash"), Docket No. 33, and opposed the Motion to Dismiss ("Opposition to Motion to Dismiss"), Docket No. 35. Defendants Rohde and Rohde Appraisal filed a Reply ("Rohde Reply"), Docket No. 38, and Defendants Mark IV and Gill filed a separate Reply ("Gill Reply"), Docket No. 39.  Scholl responded to the FDIC's Motion to Stay ("Response to Motion to Stay").  Docket No. 43.  For the following reasons, the Motion to Dismiss is GRANTED, the Motion to Quash -- which the Court construes as a motion to dismiss -- is GRANTED, and the Motion to Stay is GRANTED.

**II.   <u>BACKGROUND</u>**

Scholl, a citizen of California residing in Sonoma, California, entered into mortgage loan agreements with WaMu's office in Sonoma, California.  Compl., Docket No. 1, ¶ 9.  In 2005 and early 2006, Scholl purchased three properties in Oklahoma, and one property in North Carolina.  <u>Id.</u> ¶¶ 35, 47, 48, 55, 56, 61. Scholl purchased the properties as investments.  ¶¶ 35, 48.  A real estate agent hired by Scholl recommended that she invest in two of the Oklahoma properties, the Ernest Court property and the WB Meyer property.  <u>Id.</u> ¶ 35.  Both properties were new constructions.  <u>Id.</u>  Scholl approached WaMu to obtain loans to purchase the properties.  <u>Id.</u> ¶ 37.  Scholl alleges that WaMu selected Gill and Mark IV to perform appraisals of two of the Oklahoma properties, and WaMu selected Rohde and Rohde Appraisal

-2-

to appraise the North Carolina property.  Id. ¶¶ 40, 57.

## A.  The Ernest Court and WB Meyer Properties

Gill performed an appraisal of the Ernest Court property on September 20, 2005, and valued the property at $495,000.  Id. Ex. 1 ("September 2005 Ernest Court Appraisal").  This amount is the same as what the seller was asking for the property.  Id. ¶ 41. Gill sent the appraisal report to WaMu and Scholl in California on or about September 21, 2005.  Id. ¶ 42.  The appraisal report lists WaMu as the lender and Scholl as the borrower.  September 2005 Ernest Court Appraisal at A, C.  The report states it complies with the Uniform Standards of Professional Appraisal Practice ("USPAP").  Id. at L.

Gill performed an appraisal of the WB Meyer property on or around October 18, 2005, and valued the property at $567,000.  Id. Ex. 2 ("October 2005 WB Meyer Appraisal Report") at K.  This amount was $2010 more than the seller was asking for the property. Id. ¶ 43.  Gill sent the appraisal report to WaMu and Scholl in California.  Id. ¶ 44.  The appraisal report lists WaMu as the lender and Scholl as the borrower.  October 2005 WB Meyer Appraisal Report at A, C, E.  In the section of the report entitled "Appraiser's Certification" it states that "[t]he borrower . . . [and] mortgagee . . . may rely on this appraisal report as part of any mortgage finance transaction . . . ."  Id. at K.  The report states that it complies with the USPAP.  Id.

After receiving these reports, Scholl called Gill to discuss them.  Id. ¶ 46.  Scholl purchased the two properties.  Id. ¶ 47. For the Ernest Court property, Scholl paid $105,431.22 for the

-3-

costs and fees associated with the closing and initial down payment.  Id.  Scholl borrowed $396,000 from WaMu to pay the remaining balance of the sale price.  Id.  For the WB Meyer property, Scholl paid $118,827.24 for the costs and fees associated with the closing and initial down payment.  Id.  Scholl borrowed $451,792 from WaMu for the remaining balance.  Id.

In early 2007, Scholl decided to place the Ernest Court and WB Meyer properties on the market.  Id. ¶ 62.  Scholl asked Gill to conduct new appraisals of the two properties.  Id. ¶ 63.  On February 1, 2007, Gill performed a second appraisal of the Ernest Court property and estimated the value to be $583,000.  Id. Ex. 5 ("February 2007 Ernest Court Appraisal").  On January 31, 2007, Gill performed a second appraisal of the WB Meyer Property and estimated the value to be $596,000.  Id. Ex. 6 ("January 2007 WB Meyer Appraisal").

Scholl placed the properties on the market in February and March 2007, but received no offers.  Id. ¶ 66.  Scholl had another Oklahoma appraiser, Lary Wadley ("Wadley") review Gill's appraisals.  Id. ¶ 68.  In October 2007, Wadley estimated the value of the Ernest Court property, at the time Scholl purchased it, at between $468,000 and $478,000.  Id. ¶ 73.  Since Gill originally appraised the Ernest Court property as worth $495,000, Wadley's report suggests the property was at least $17,000 over-appraised.  Wadley estimated the value of the WB Meyer property, at the time Scholl purchased it, at between $425,000 and $445,000.  Id. ¶ 71.  Since Gill originally appraised the WB Meyer property as worth $567,000, Wadley's opinion suggests the WB Meyer property

-4-

1   was at least $122,000 over-appraised.

2       **B.   The Yale Loop Property**

3       On or about January 1, 2006, Scholl approached WaMu's loan

4   officer about a potential investment property in North Carolina.

5   Id. ¶ 56.  WaMu selected Rohde and Rohde Appraisal to appraise the

6   Yale Loop property.   Id. ¶ 57.  In January 2006, Rohde appraised

7   the property and faxed a copy of the appraisal to Scholl.   Id.

8   Rohde estimated the value of the Yale Loop property to be

9   $740,800.   Id. Ex. 4("Yale Loop Appraisal") at E, I.  This value

10  was $4 more than the seller's asking price.   Id. ¶ 57.

11      The appraisal report lists WaMu as the lender and Scholl as

12  the borrower.  Yale Loop Appraisal at C.  In the section of the

13  report entitled "Appraiser's Certification" it states that "[t]he

14  borrower . . . [and] mortgagee . . . may rely on this appraisal

15  report as part of any mortgage finance transaction . . . ."   Id.

16  at I.  The report states that it complies with the USPAP.   Id.

17      Scholl contacted Rohde to discuss his appraisal.   Id. ¶ 59.

18  Based on Rohde's assurances, Scholl purchased the Yale Loop

19  property and entered into a mortgage loan with WaMu.   Id. ¶ 61.

20  For the Yale Loop property, Scholl paid $160,302.46 for the costs

21  and fees associated with the closing and initial down payment.

22  Id.  Scholl borrowed $592,000 from WaMu for the remaining balance.

23  Id.  In 2008, Scholl requested Andrew Picarsic ("Picarsic"), a

24  licensed real estate appraiser in North Carolina, to review

25  Rohde's appraisal of the Yale Loop property.   Id. ¶ 76.  Picarsic

26  is of the opinion that the Yale Loop property was $95,800 over-

27  appraised.   Id. ¶ 82.

28

United States District Court
For the Northern District of California

-5-

### C. Scholl's Causes of Action

On August 20, 2008, Scholl filed her Complaint, alleging causes of action for: (1) breach of contract/agency against WaMu and appraiser defendants; (2) breach of fiduciary duty against WaMu and appraiser defendants; (3) constructive fraud against WaMu and appraiser defendants; (4) negligent misrepresentation against WaMu and appraiser defendants; (5) negligence against each appraiser defendant; (6) unfair business practices in violation of California Business & Professions Code, §§ 17200, et seq.; (7) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; and (8) quasi-contract/unjust enrichment against defendants. Id. ¶¶ 85-181.

## III. LEGAL STANDARD

### A. California's Long-Arm Statute and Constitutional Due Process

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Under California law, "[a] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10. This statutory limitation is coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court. Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1286 (9th Cir. 1977). Since California's long-arm statute is

-6-

co-extensive with federal standards, a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process. Panavision, 141 F.3d at 1320.

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state such that maintenance of the suit does not offend "traditional conception[s] of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945). The defendant's "conduct and connection with the forum State" must be such that the defendant "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A court may exercise either general or specific jurisdiction over a nonresident defendant. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 nn.8-9 (1984).

**B.   General Jurisdiction**

General personal jurisdiction applies where a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. Data Disc, 557 F.2d at 1287 (internal quotations omitted).

> For general jurisdiction to exist over a nonresident defendant . . ., the defendant must engage in "continuous and systematic general business contacts," . . . that "approximate physical presence" in the forum state . . . . This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.

United States District Court
For the Northern District of California

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (citations omitted).  The Ninth Circuit has regularly declined to find general jurisdiction even where the contacts were quite extensive.  See, e.g., Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 n.3 (9th Cir. 1993) (citing cases).  "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there."  Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

### C.   Specific Jurisdiction

Where general jurisdiction is inappropriate, a court may still exercise specific personal jurisdiction depending on "the nature and quality of the defendant's contacts in relation to the cause of action."  Data Disc, 557 F.2d at 1287.  The Ninth Circuit applies a three-prong test when analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice.

Schwarzenegger, 374 F.3d at 802.  The plaintiff bears the burden of satisfying the first two prongs, and if he or she fails to

-8-

United States District Court
For the Northern District of California

satisfy either, personal jurisdiction is not established.  <u>Id.</u>  If
the plaintiff satisfies these prongs, the burden shifts to the
defendant "to present a compelling case" that the exercise of
jurisdiction would not be reasonable.  <u>Burger King Corp. v.</u>
<u>Rudzewicz</u>, 471 U.S. 462, 476-78 (1985).

### D.    <u>Prima Facie Showing of Jurisdictional Facts</u>

In opposition to a defendant's motion to dismiss for lack of
personal jurisdiction, the plaintiff bears the burden of
establishing that jurisdiction is proper.  See <u>Sher v. Johnson</u>,
911 F.2d 1357, 1361 (9th Cir. 1990).  If the district court
decides the motion without an evidentiary hearing, then "the
plaintiff need only make a prima facie showing of the
jurisdictional facts."  <u>Id.</u>  The Court must accept as true
uncontroverted allegations in the plaintiff's complaint.  <u>Am. Tel.</u>
<u>& Tel. Co. v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th
Cir. 1996).  "Conflicts between the parties over statements
contained in affidavits must be resolved in the plaintiff's
favor."  <u>Schwarzenegger</u>, 374 F.3d at 800.

## IV.  <u>DISCUSSION</u>

### A.    <u>No General Jurisdiction over Gill and Mark IV</u>

The Court finds that Scholl has failed to make a prima facie
showing that the Court has general jurisdiction over Gill and Mark
IV.  Scholl alleges that Gill and Mark IV appraised two Oklahoma
properties for WaMu and Scholl, and reappraised the same
properties over a year later, at Scholl's request.  Compl. ¶¶ 40-
44, 63-65.  Scholl alleges that Gill sent the appraisal reports to

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   California, and Scholl called Gill to discuss his appraisals.

2   Compl. ¶¶ 42, 44, 46.   However, Scholl does not allege that Gill

3   or Mark IV ever performed an appraisal for any other California

4   resident.   Indeed, Gill declares that "[n]either he nor Mark IV

5   has ever had a customer who resided in California before

6   Plaintiff."   Gill Decl. ¶ 9.[1]   Based on Scholl's allegations, it

7   is clear that Gill and Mark IV do not engage in "continuous and

8   systematic general business contacts" in California that

9   approximate physical presence in this State.   See Schwarzenegger,

10  374 F.3d at 801.   Therefore Gill and Mark IV are not subject to

11  general personal jurisdiction in California.

12       Scholl contends that discovery is necessary to determine if

13  the Court has general jurisdiction over Gill and Mark IV.   Opp'n

14  to Mot. to Dismiss at 12.[2]   The Court has discretion to grant or

15  deny jurisdictional discovery.   Wells Fargo & Co. v. Wells Fargo

16  Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977).   The Court

17  can deny jurisdictional discovery "when it is clear that further

18  discovery would not demonstrate facts sufficient to constitute a

19  basis for jurisdiction."   Id.

20       Scholl contends jurisdictional discovery is necessary because

21  WaMu selected Gill to appraise the Ernest Court and WB Meyer

---

[1] Gill filed a declaration in support of the Motion to
Dismiss.   Docket No. 9.

[2] Gill and Mark IV contend that Plaintiff's Opposition should
be disregarded by the Court because it was untimely filed.   Gill
Reply at 1.   In a previous Order, the Court took note of the late
filing, and the Court gave Gill and Mark IV extra time to file
their Reply.   See Docket No. 37.   The Court therefore DENIES the
request to disregard Plaintiff's Opposition.

-10-

1  properties in Oklahoma, and Scholl suggests WaMu or some other

2  bank may have selected Gill to appraise other properties for other

3  California residents.  Opp'n to Mot. to Dismiss at 12-13.  Despite

4  Gill's declaration that neither he nor Mark IV has ever had a

5  customer who resided in California before Plaintiff, see Gill

6  Decl. ¶ 9, Scholl responds that Gill may have had appraisal

7  customers who are California residents after Plaintiff.  Opp'n to

8  Mot. to Dismiss at 13-14.

9       However, even if Gill did have other California customers

10  after Scholl, it is clear these contacts would not be sufficient

11  to establish continuous and systematic general business contacts

12  that approximate physical presence in California.  Gill has

13  resided in Oklahoma for the past seventy-three years, with the

14  exception of two brief stints in Pennsylvania and Arizona; he

15  intends to remain in Oklahoma; he has been a licensed appraiser in

16  Oklahoma since 1991; he has only been to California twice in his

17  life for vacations; and he has never lived in California.  Gill

18  Decl. ¶¶ 5-8.  Neither Gill nor Mark IV have ever owned property

19  in California; they have never paid taxes in California; they do

20  not have employees or agents in California; they do not have an

21  office in California; Mark IV is not registered in California as a

22  corporation; they have never visited Plaintiff in California in

23  relation to the appraisals at issue here; they do not maintain

24  bank accounts in California; and they have never solicited

25  customers in California.  Id. ¶¶ 11-18.  Under these

26  circumstances, it is clear that Scholl has not satisfied the high

27  burden for establishing general jurisdiction, and that

28                                    -11-

**United States District Court**
For the Northern District of California

1    jurisdictional discovery would be pointless.  <u>See</u> <u>Boschetto v.</u>

2    <u>Hansing</u>, 539 F.3d 1011, 1020 (9th Cir. 2008) (finding district

3    court did not abuse discretion by denying request for

4    jurisdictional discovery "which is based on little more than a

5    hunch that it might yield jurisdictionally relevant facts").

6           **B.    No General Jurisdiction over Rohde and Rohde Appraisal**

7           Rohde and Rohde Appraisal move under California Code of Civil

8    Procedure section 418.10(a) to quash service of summons on the

9    ground of lack of jurisdiction or to dismiss the action on the

10   ground that California is an inconvenient forum.  Mot. to Quash at

11   1.  Rohde's attorneys appear ignorant of the fact that the Federal

12   Rules of Civil Procedure control in this Court, not California's

13   procedural code.  <u>Snead v. Metropolitan Property & Cas. Ins. Co.</u>,

14   237 F.3d 1080, 1090 (9th Cir. 2001)(under the <u>Erie</u> doctrine,

15   "federal courts sitting in diversity apply state substantive law

16   and federal procedural law.")(quoting <u>Gasperini v. Center for</u>

17   <u>Humanities, Inc.</u>, 518 U.S. 415, 427 (1996)).  Nevertheless, the

18   Court treats Rohde's motion as a Rule 12(b)(2) motion to dismiss

19   for lack of personal jurisdiction.

20          The Court finds that Scholl has failed to make a prima facie

21   showing that the Court has general jurisdiction over Rohde and

22   Rohde Appraisal.  Scholl alleges that WaMu selected Rohde and

23   Rohde Appraisal to appraise the Yale Loop property located in

24   North Carolina.  Compl. ¶ 57.  On January 11, 2006, Rohde

25   appraised the property and faxed Scholl a copy of the appraisal

26   report.  <u>Id.</u>  Scholl contacted Rohde to discuss the report.  <u>Id.</u>

27   ¶ 59.  After discussing the report with Rohde, Scholl purchased

28                                    -12-

the Yale Loop property.  <u>Id.</u> ¶ 61.

Based on these contacts, the Court finds that Scholl has not shown the Court has general personal jurisdiction over Rohde and Rohde Appraisal.  These contacts fall far short of continuous and systematic general business contacts that approximate physical presence in California.  <u>See</u> <u>Schwarzenegger</u>, 374 F.3d at 801. Scholl contends that discovery is necessary to determine if general jurisdiction exists.  Opp'n to Mot. to Quash at 13.  For the reasons discussed above, <u>see</u> Section IV(A), <u>supra</u>, the Court DENIES the request for jurisdictional discovery.

### C.  <u>No Specific Jurisdiction over Gill and Mark IV</u>

Scholl contends that Gill's delivery of the two appraisals to Scholl in California confers specific personal jurisdiction over Gill and Mark IV.  Opp'n to Mot. to Dismiss at 4.  Scholl also spoke with Gill on the telephone, and relied on Gill's reports in deciding to purchase the two Oklahoma properties.  Compl. ¶¶ 46, 47.  At Plaintiff's request, Gill reappraised the two Oklahoma properties in January 2007.  <u>Id.</u> ¶ 63.  The Court finds that the nature and quality of Gill's and Mark IV's contacts in relation to Scholl's causes of action do not give the Court specific personal jurisdiction over Gill and Mark IV.

The first prong of the three-part specific jurisdiction test requires Scholl to show that the non-resident appraisers either purposefully availed themselves of the privilege of conducting activities in California, or purposefully directed their activities toward California.  <u>Schwarzenegger</u>, 374 F.3d at 802. A purposeful availment analysis is most often used in suits

-13-

sounding in contract.  _Id._  A purposeful direction analysis is most often used in suits sounding in tort.  _Id._

Based on the Ninth Circuit's reasoning in _Sher v. Johnson_, 911 F.2d 1357 (9th Cir. 1990), and in _Boschetto_, 539 F.3d at 1014, the Court finds that Plaintiff's case sounds primarily in contract.  _Sher_ concerned a California client's legal malpractice action against a Florida law firm and its partners.  911 F.2d at 1360.  The Ninth Circuit stated that "[a]lthough some of Sher's claims sound in tort, all arise out of Sher's contractual relationship with the defendants."  _Id._ at 1362.  _Boschetto_ concerned a Wisconsin seller's sale of a car to a California buyer over eBay.  539 F.3d at 1014.  The buyer's complaint consisted of causes of action for violation of California's Consumer Protection Act, breach of contract, misrepresentation, and fraud, and the Ninth Circuit determined that the case sounded primarily in contract.  _Id._ at 1015, 1017.  Similarly, here, Scholl's case sounds primarily in contract because she alleges that the appraiser defendants had contractual relationships with WaMu and Scholl, but that they failed to live up to their obligations to perform the appraisals pursuant to USPAP.  Compl. ¶¶ 6, 19, 93-102.  Even though some of Plaintiff's claims sound in tort, all arise out of defendants' agreements to appraise properties for WaMu and Scholl.  _See_ Compl. ¶¶ 85-181.  For example, Scholl alleges that Gill and Mark IV were hired to appraise Oklahoma properties, and they negligently misrepresented that the properties were worth more than their true value.  _Id._ ¶¶ 126-132.

Since this case sounds primarily in contract, the Court must

-14-

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    perform a purposeful availment analysis.  A showing that a

2    defendant purposefully availed himself of the privilege of doing

3    business in a forum state typically consists of evidence of the

4    defendant's actions in the forum, such as executing or performing

5    a contract there.  Schwarzenegger, 374 F.3d at 802.  By taking

6    such actions, a defendant "purposefully avails itself of the

7    privilege of conducting activities within the forum State, thus

8    invoking the benefits and protections of its laws."  Hanson v.

9    Denckla, 357 U.S. 235, 253 (1958).  In return for these "benefits

10   and protections," a defendant must -- as a quid pro quo -- "submit

11   to the burdens of litigation in that forum."  Burger King, 471

12   U.S. at 476.

13        Scholl contends the Court has specific jurisdiction over Gill

14   and Mark IV based on four contracts "to provide Scholl with lawful

15   appraisals which complied with USPAP, which Scholl paid for."

16   Opp'n to Mot. to Dismiss at 7.  Scholl notes that Gill delivered

17   the appraisal reports to Plaintiff in California and that she

18   relied on them when determining whether to enter into loan

19   agreements with WaMu.  Id. at 7-8.

20        The mere existence of a contract with a party in the forum

21   state does not constitute sufficient minimum contacts for

22   jurisdiction.  Burger King, 471 U.S. at 478.  To have jurisdiction

23   over Gill and Mark IV based on contracts to perform appraisals,

24   the defendants' contacts must be substantial, and not merely

25   "random, fortuitous, or attenuated."  Id. at 479.

26        The Court finds that Scholl has not shown that Gill's and

27   Mark IV's contacts are substantial enough for the Court to have

28                              -15-

specific personal jurisdiction over these defendants.  Scholl
alleges that WaMu selected Gill and Mark IV to perform the
appraisals.  Compl. ¶ 40.  Gill and Mark IV would therefore appear
to have been agents or independent contractors of WaMu.  Id.
Presumably, Gill and Mark IV would have performed the appraisals
of the Oklahoma properties for WaMu even if the borrower was not a
California resident.  It is therefore random and fortuitous that
the borrower happened to reside in California.  While Scholl
contacted Gill directly to have him reappraise the properties in
January 2007, Compl. ¶ 63, this contact is too attenuated to
confer jurisdiction over Gill and Mark IV, especially since the
properties that were appraised are in Oklahoma.

     This case is factually similar to Sher, which supports a
determination that the Court does not have specific personal
jurisdiction over Gill and Mark IV.  In Sher, a Florida law firm
represented a California client in a criminal proceeding in
Florida.  911 F.2d at 1362.  The Ninth Circuit noted that:

> As normal incidents of this representation the
> partnership accepted payment from a California
> bank, made phone calls and sent letters to
> California.  These contacts, by themselves, do
> not establish purposeful availment; this is
> not the deliberate creation of a "substantial
> connection" with California . . . , nor is it
> the promotion of business within California.

Id. (citation omitted).

     Similarly, here, Gill and Mark IV did not deliberately create
a substantial connection with California.  WaMu contacted Gill and
Mark IV to appraise two Oklahoma properties, as part of a mortgage
transaction that happened to have a California borrower.  See

-16-

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Compl. ¶ 40.  Scholl reached out to Gill and Mark IV to perform the second set of appraisals; Gill and Mark IV did not solicit Scholl's business.  See id. ¶¶ 63-65.  In Sher, the business the partnership promoted was legal representation in Florida.  911 F.2d at 1362.  Here, the business Gill and Mark IV promote is real estate appraisals in Oklahoma.  Gill Decl. ¶¶ 7-18.  Just as Sher came to the law firm in Florida, Scholl approached Gill and Mark IV about reappraising the Ernest Court and WB Meyer properties in January 2007.  See Compl. ¶¶ 63-65.  Gill and Mark IV did not take any affirmative action to promote business in California.  It is clear that Gill and Mark IV did not purposefully avail themselves of the privilege of conducting business in California.  See Boschetto, 539 F.3d at 1017 (Wisconsin seller did not purposefully avail himself of privilege of doing business in California where he sold one car to California buyer via eBay); Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica, 614 F.2d 1247, 1253 (9th Cir. 1980) ("It is not sufficient that the plaintiff is a California resident . . . or that an act outside California imposes an economic burden on a California resident . . . .")(citations omitted).

In another case concerning alleged fraudulent appraisals, a district court in Pennsylvania found that it had personal jurisdiction over a California corporation because the properties at issue were located in Pennsylvania, and the California corporation held itself out as a company that had expertise to conduct review appraisals of Pennsylvania property.  BancMortgage Financial Corp. v. Guarantee Title & Trust Co., No. 99-2932, 2000

-17-

**United States District Court**
For the Northern District of California

WL 873308, at *1-3 (E.D. Pa. June 22, 2000). Here, by contrast, there is nothing to suggest that Gill and Mark IV have ever appraised or reviewed appraisals of California properties, and Scholl's causes of action relate to properties in Oklahoma and North Carolina. Because the properties at issue in this case are not located in California, the Court finds that Gill and Mark IV's appraisals were not sufficiently connected to California to confer personal jurisdiction over these defendants.

Scholl's reliance on Data Disc, 557 F.2d at 1288-89, does not support a finding of specific jurisdiction. See Opp'n to Mot. to Dismiss at 8. In Data Disc, the defendant's contacts with the forum state were far more significant than Gill's or Mark IV's. In Data Disc, the contract was partially negotiated in California, and actually formed in California upon the execution of Data Disc's acceptance. 557 F.2d at 1288. After the execution of the initial purchase order, defendant's personnel visited California on five occasions, and defendant supplied one of its own engineers to work with Data Disc in California. Id. at 1284, 1287-88. Here, by contrast, the Court is dealing with contracts that were performed exclusively in Oklahoma by an Oklahoma appraiser, who appraised Oklahoma properties. See Compl. ¶¶ 40-45. Neither Gill nor anyone from Mark IV visited Plaintiff in California in relation to the appraisals done on the Ernest Court or WB Meyer properties. Gill Decl. ¶ 16.

Scholl's reliance on McGee v. International Life Insurance Co., 355 U.S. 220 (1957) is also misplaced. See Opp'n at 8. In McGee, the Supreme Court found that "the suit was based on a

-18-

United States District Court
For the Northern District of California

contract which had substantial connection with" the State of California.  355 U.S. at 223.  The Supreme Court emphasized California's "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."  Id.  Here, the alleged contracts are not insurance contracts, so California's policy of protecting local insurance policyholders is not implicated.  Also, the contracts in this case do not have a substantial connection with California because they concern appraisals by an Oklahoma appraiser of Oklahoma properties.

Scholl has not shown purposeful availment by Gill and Mark IV, and therefore the Court does not need to reach the second and third prongs of the specific personal jurisdiction test.  Also, the Court does not need to reach Gill and Mark IV's contention that this Court is an improper venue.  See Mot. to Dismiss at 13-14.

**D.  No Specific Jurisdiction over Rohde and Rohde Appraisal**

As was the case for Gill and Mark IV, the Court finds that Scholl has not shown that Rohde and Rohde Appraisal purposefully availed themselves of the privilege of conducting activities in California.  Even though Rohde and Rohde Appraisal did not submit a declaration in support of their motion, the burden falls on Scholl to make a prima facie showing of jurisdictional facts. Based on the allegations in the Complaint, the contacts of Rohde and Rohde Appraisal with California are even more attenuated than those of Gill and Mark IV: Rohde and Rohde Appraisal appraised one North Carolina property, and they did not reappraise the property

-19-

United States District Court
For the Northern District of California

1    before Scholl sought an independent review of the appraisal.  <u>See</u>

2    Compl. ¶¶ 56-61, 76.  Because the property is located in North

3    Carolina, and for the reasons discussed above, <u>see</u> Section IV(C),

4    <u>supra</u>, the Court finds that it does not have specific jurisdiction

5    over Rohde and Rohde Appraisal.  The Court does not need to reach

6    Rohde's and Rohde Appraisal's contention that this Court is an

7    inconvenient forum.  <u>See</u> Mot. to Quash at 6-8.

8         **E.    Motion to Stay**

9         The FDIC, as Receiver for Defendant WaMu, moves to stay this

10   action to allow time for the FDIC to make a determination on

11   Scholl's admininstrative claim pursuant to 12 U.S.C. §§

12   1821(d)(3)-(13), enacted as part of the Financial Institutions

13   Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L.

14   No. 101-73, 103 Stat. 183.  Mot. to Stay at 1.  On March 3, 2009,

15   Scholl filed an administrative claim with the FDIC.  Orenstein

16   Decl. ¶ 7.[3]  The Ninth Circuit requires all claimants against a

17   failed financial institution to exhaust the administrative claims

18   process as a prerequisite to judicial review of their claims.  <u>See</u>

19   <u>Intercontinental Travel Mktg., Inc. v. FDIC</u>, 45 F.3d 1278, 1282-83

20   (9th Cir. 1994).  Scholl is not opposed to a stay pending

21   determination of her administrative claim, so long as the stay

22   applies to all parties in this action.  Resp. to Mot. to Stay at

23   2.  The Court therefore STAYS this action as to all remaining

24   parties until the earlier of the date on which the FDIC grants or

25

26        [3] Jane A. Orenstein, an attorney in the FDIC's legal division,
     filed a declaration in support of the Motion to Stay.  Docket No.
27   34.

28                                    -20-

denies Plaintiff's administrative claim, or August 31, 2009.

**V.   CONCLUSION**

For the reasons described above, the Court GRANTS the motions to dismiss for lack of personal jurisdiction filed by Jerry Gill, Mark IV Appraisals, Inc., Mark D. Rohde, and Rohde Appraisal Services.  These defendants are DISMISSED from the case WITH PREJUDICE.  The Court GRANTS the FDIC's motion to stay, and stays the case as to the remaining parties until the earlier of the date on which the FDIC grants or denies Plaintiff's administrative claim, or August 31, 2009.

IT IS SO ORDERED.

Dated: June 5, 2009

_____
UNITED STATES DISTRICT JUDGE